**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BONITA LIPSEY, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 19 C 7681 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Magistrate Judge Gabriel A. Fuentes |
| WALMART, INC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the magistrate judge on consent. (D.E. 10, 12.) This order imposes

a protocol for the depositions of medical professionals or treatment providers in the current

environment, which includes a public health emergency amid community spread of COVID-19.

**Introduction**

This is an action sounding in negligence. It is before the Court on defendant Walmart,

Inc.'s notice of removal, the basis for federal jurisdiction being diversity of citizenship in an action

with more than $75,000 at issue. Plaintiff alleges that on August 23, 2017, she was walking in a

Walmart store at 4720 S. Cottage Grove Avenue in Chicago when she slipped and fell on what she

alleges was a "wet and/or slick store floor." (D.E. 1, Exh. B.) Plaintiff describes her injuries as

severe and permanent, and she alleges that she has incurred "large sums of money for medical care

and services." (*Id.*)

On December 17, 2019, the Court entered the parties' proposed discovery schedule, which

provided that all non-medical fact discovery – that is, fact discovery excluding medical treating

physicians – was to be completed by May 11, 2020. (D.E. 15.) The parties have not yet advised

the Court of how many medical treating physicians or other health-care personnel they plan to depose.

Since the Court's December 17, 2019 scheduling order, much has changed. The growing coronavirus pandemic is sweeping across the world, and the United States is among nations scrambling to prepare for and cope with the impact of the virus. On March 16, 2020, this Court, per the Chief Judge of the United States District Court for the Northern District of Illinois, issued an order extending all deadlines in civil matters by 21 days in response to the COVID-19 public health emergency. *See Amended General Order* No. 20-0012 (N.D. Ill. Mar. 16, 2020). That order effectively extended the deadline for the completion of the non-medical fact discovery in this case to June 1, 2020. Also in the meantime, the magistrate judge has developed concerns about whether the depositions of medical providers should continue to go forward without scrutiny from the Court with respect to the question of the burden that deposition participation places or may place on medical providers during the COVID-19 public health emergency. *See DeVine v. XPO Freight Logistics,* No. 18 C 1264, 2020 WL 1275087, at *2-3 (N.D. Ill. Mar. 17, 2020). This memorandum opinion expands on the concerns expressed in *DeVine* amid additional information about how health care providers and courts are reacting to the fast-developing COVID-19 public health emergency.

**Discussion**

Federal Rule of Civil Procedure 26(b)(1), as amended in 2015, provides:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). In addition, Rule 45 authorizes courts to quash or modify a subpoena where compliance with it would subject a person to "undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii), (iv). Accordingly, district courts have wide discretion in managing civil discovery. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017).

The Court's discretion includes taking steps that, notwithstanding their impact on the speed of the ultimate determination of the matter, recognize the severity of the public health crisis and the role of courts and litigants in being public citizens during the crisis. For example, in *Art Ask Agency v. The Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associations Identified in Schedule A Hereto*, No. 20 C 1666 (N.D. Ill. Mar. 18, 2020) (Seeger, J.) (unpublished), a party moved for a temporary restraining order alleging trademark infringement arising from certain allegedly counterfeit drawings of unicorns. When a district judge of this Court did not set an immediate hearing, the plaintiff moved to reconsider, demanding a hearing over the unicorn drawing claims that very week, and then filed a motion before the designated emergency judge. The judge presiding over the matter denied the motion and responded:

> Meanwhile, the world is in the midst of a global pandemic. The President has declared a national emergency. The Governor has issued a state-wide health emergency. As things stand, the government has forced all restaurants and bars in Chicago to shut their doors, and the schools are closed, too. The government has encouraged everyone to stay home, to keep infections to a minimum and help contain the fast-developing public health emergency …. The world is facing a real emergency. Plaintiff is not.

*Id.* Courts in this and other federal judicial districts have placed civil and even criminal jury trials on hold. *See Amended General Order* No. 20-0012 (N.D. Ill. Mar. 16, 2020) (effectively pausing civil litigation in this district for 21 days and striking from the Court's calendar all civil jury trials set from March 17, 2020 until April 3, 2020); *In re Precautionary Measures in Response to*

*Coronavirus Disease 2019,* Admin. Order No 2020-0001, 2020 WL 1233434 (D.V.I. Mar. 13, 2020) ("No new civil or criminal jury trials will be conducted until further notice.")  One court approved all depositions being taken by "telephone, videoconference, or other remote means" in view of the COVID-19 national emergency.  *Sinceno v. The Riverside Church in the City of New York*, No. 18-cv-2156 (LJL), 2020 WL 1302053 (S.D.N.Y. Mar. 18, 2020).  Another court opened traditionally in-person civil hearings to the possibility of videoconferencing.  *See Automatic Equip. Mfg. Co. v. Danko Mfg., LLC*, N0. 8:19-CV-162, 2020 WL 1182006, at *2 (D. Neb. Mar. 12, 2020) (offering to allow parties to hold *Markman* hearing in patent infringement case by videoconference).  Still another court allowed witnesses to appear by video in a civil jury trial.  *See ResCap Liquid. Tr. v. Primary Res. Mort.*, Nos. 13-cv-3451 (SRN/HB) and 16-cv-4070 (SRN/HB), 2020 WL 1280931, at *3 (D. Minn. Mar. 13, 2020) ("Under the circumstances, COVID-19's unexpected nature, rapid spread, and potential risk establish good cause for remote testimony.")  Considered together, these judicial decisions demonstrate flexibility and sensitivity by courts in the face of a serious public health emergency and the threat it poses to the health and public safety of litigants, court staff and the general public.

In the meantime, the Court has before it a public record replete with references to the impact that community spread of COVID-19 could have, and is already having, on medical care providers, doctors, hospitals and staff.  *See* Dr. Cornelia Griggs, "A New York Doctor's Coronavirus Warning:  The Sky Is Falling," *The New York Times* (Mar. 19, 2020) ("Today, at the hospital where I work, one of the largest in New York City, Covid-19 cases continue to climb, and there's movement to redeploy as many health care workers as possible to the E.R.s, new 'fever clinics' and ICUs.  It's becoming an all-healthy-hands-on-deck situation."); Lisa Schenker and David Heinzmann, "How hospitals are preparing for flood of COVID-19 patients," *Chicago*

*Tribune* (Mar. 19, 2020) ("Many [hospitals] have started reassigning medical staff, canceling elective surgeries to save resources, moving testing for COVID-19 outside typical patient areas and drwing up plans for how to house large numbers of patients.").[1]

As this Court noted in *DeVine*:

> The medical community is very, very busy right now, and likely will be busy for weeks or months to come. And these doctors and nurses are busy preparing to take care of sick people. Soon they may be taking care of more sick people than they can handle. We all hope that conditions will not overwhelm our health care system, but at this writing, we do not know how significant the impact will be. Even if the system is not overwhelmed, it may be strained to at or near its limits. Physicians who do not normally practice emergency care may find themselves deployed to emergency rooms. Physicians who might never practice emergency medicine may find themselves immersed in logistical planning or other essential services. It is reasonable for all of us to expect that at this moment and at least for the next few weeks and possibly longer, the situation at hospitals and medical offices will be all hands on deck. All hands cannot be on deck if some of them are at a law office sitting for a deposition in a tort lawsuit.

*DeVine*, 2020 WL 1275087, at \*2.

In applying Rule 26(b)(1)'s proportionality requirement including "whether the burden or expense of the proposed discovery outweighs the likely benefit," the Court is imposing the following protocol on the parties in this case as part of its discretion in supervising discovery and

---

[1] *See also* Lindsey Tanner, "US hospitals brace for 'tremendous strain' from new virus", *The Associated Press* (Mar. 13, 2020), https://apnews.com/6c9b9686c4af21b9984341d330073979 ("U.S. hospitals are setting up circus-like triage tents, calling doctors out of retirement, guarding their supplies of face masks and making plans to cancel elective surgery as they brace for an expected onslaught of coronavirus patients."); Jason Lemon, "New York Governor Asks Retired Doctors and Nurses to Sign Up and Be On Call Amid Coronovirus Crisis," *Newsweek* (Mar. 17, 2020), https://www.newsweek.com/new-york-governor-asks-retired-doctors-nurses-sign-call-amid-coronavirus-crisis-1492825; John Daley, "Like Emergency Medicine Special Forces, Colorado Doctors and Nurses Get Ready To Combat Coronavirus," *CPR News* (Mar. 15, 2020), https://www.cpr.org/2020/03/15/like-emergency-medicine-special-forces-colorado-doctors-and-nurses-get-ready-to-combat-coronavirus/; Morgan Lowrie, "COVID-19: Thousands of doctors, nurses rally to government call to fight coronavirus," *National Post* (Mar. 17, 2020), https://nationalpost.com/news/thousands-of-doctors-nurses-answer-call-to-help-with-covid-19-effort, (In Canada, "some provinces have begun reaching out to recently retired doctors and nurses to ask them to return to work if the pandemic worsens — and the answer is yes."); Stephen Matthews, "Government 'needs to get a move on' with plans to recall retired doctors to bolster the NHS workforce during the coronavirus outbreak, top GP warns," *Daily Mail* (Mar. 17, 2020), https://www.dailymail.co.uk/news/article-8120653/Government-needs-plans-recall-retired-doctors.html (U.K.).

with particular attention to weighing the burden and benefit of proposed deposition discovery from medical providers:

1.      Before any deposition discovery of medical treaters is scheduled, and before any subpoenas are served on such witnesses, the parties, through counsel, shall meet and confer by telephone to discuss the intended list of medical treaters to be deposed. The parties shall attempt to reach agreement as to whether these depositions should proceed. Or, alternatively, if the parties conclude that settlement of the matter should be pursued actively at this time, they may reach an agreement to defer the medical provider depositions pending a settlement conference, and they shall make a report to Court as to any such agreements in a written status report on April 10, 2020.

2.      As to each such provider whose deposition is still being sought after the foregoing meet and confer, the party seeking the deposition shall disclose to the Court the following in a written document styled as a "Response to Court's Medical Provider Deposition Protocol":

a.      The proposed deponent's name, hospital affiliation, and area of practice or specialty.

b.      The proposed deponent's current and anticipated involvement in preparation or response to the COVID-19 public health emergency. Counsel should obtain this information from the provider witnesses or their counsel.

c.      The nature and extent of the proposed deponent's involvement in the treatment of the plaintiff or other party, including the dates of treatment and the type of treatment provided.

d.      The proposed deponent's relative importance to the case, as stated by the party seeking the discovery. Such party should consider the proposed deponent's relative role in the party's treatment in comparison to other treaters whose depositions are sought. Parties should

consider this portion of their protocol response as their opportunity to set forth reasons why the burden of deposing a given medical treater at this time ought not to prevent the deposition under the concept of proportionality to the needs of the case under Rule 26(b)(1).

          e.        The degree to which alternative avenues might be available to obtain the same discovery or sufficient discovery, including but not limited to the depositions of other witnesses, the admissibility of summary medical records by stipulation, affidavits, or Rule 31 depositions by written questions.

          3.        The "Response to Court's Medical Provider Deposition Protocol" shall be filed in advance of serving any subpoena on a medical provider, and the subpoena will not be permitted without order of court.  If the subpoena already is served, the Response is to be filed with the Court before any deposition for a medical treater is confirmed or any notice of deposition is served.  As to any depositions already noticed, the notices of deposition are to be considered vacated until the party files the Response and obtains a court order permitting the deposition.

          4.        A party opposing the taking of a medical treater deposition may file a "Reply As To Court's Medical Provider Deposition Protocol" within 10 days of filing of the Response, and such Reply may include or incorporate any statement(s) by medical providers or their retained counsel.

          5.        The Court will rule promptly on requests made to depose medical treaters under this protocol.  The Court may alter or eliminate this protocol as conditions dictate.

In this matter, the parties have ample time to consider and comply with the foregoing protocol.  The Court has ordered the parties to file a status report on May 12, 2020, to address ongoing discovery progress in this matter.  Before filing that report, the parties should consider

the foregoing protocol and confer telephonically so they may include in that report a plan for compliance with the protocol.

 SO ORDERED.

ENTER:

GABRIEL A. FUENTES
United States Magistrate Judge

DATED:  March 20, 2020